GORDON v CITY OF WARREN PLANNING &
URBAN RENEWAL COMMISSION

1. JUDGMENT—CONSENT JUDGMENT—MUTUAL MISTAKE—BUILDINGS—
HIGHWAYS.

There was a mutual mistake of fact which abrogates a circuit
court consent judgment, in an action to compel a city planning
and urban renewal commission to approve of a low-rise multi-
ple-dwelling site plan, where the parties mistakenly believed
that they had extra feet within which to locate two multiple-
dwelling buildings but, because they did not, the buildings
would be within a proposed widening of a road, plaintiffs
themselves did not have any knowledge of this fact, and both
plaintiffs and defendant honestly and in good faith believed
that the site plan, which incorrectly showed the location of the
road, was proper and that the agreement, as to location of
buildings, worked out by the parties could be fulfilled.

2. JUDGMENT—CONSENT JUDGMENT—MUTUAL MISTAKE—VACATING
JUDGMENT.

Once a determination has been made that a mutual mistake of
fact occurred, a court has the power to correct that mistake by
vacating the judgment; this is true even in the case of a
consent judgment.

3. ESTOPPEL—STATUTES—NOTICE—PLATS—ORDINANCES—PROPERTY
OWNERS—JUDGMENTS.

No estoppel has occurred where notice was not sent to every
property owner as required by a statute stating that the
legislative body of a city may adopt a plat provided that notice
of the time and place when and where it shall be considered for

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 46 Am Jur 2d, Judgments § 688 et seq.

[4–8] 58 Am Jur, Zoning § 10 et seq.

Admissibility of evidence of proposed or possible subdivision or
platting of condemned land on issue of value in eminent domain
proceedings, 26 ALR3d 780.

Plotting or planning in anticipation of improvement as taking a
damaging of property affected, 37 ALR3d 127.

final passage shall be sent to property owners affected thereby although plaintiffs, who were affected property owners, did not challenge the failure to send the statutory notice in the original proceedings, pursuant to which a judgment was entered, because due to a mutual mistake which occurred in the entry of the judgment the Michigan Supreme Court would decide the rights of the parties as if no judgment had been entered (MCLA 125.52).

4. Statutes—Notice—Constructive Notice—Actual Notice—Municipal Corporations—Ordinances—Plats.

Terms of a statute are clear, which provides in part that "[t]he legislative body of any city or village may by ordinance adopt any such precised plat certified to it by the planning commission as provided in section 1: Provided, That notice of time and place when and where it shall be considered for final passage shall be sent by mail to the record owners of land located within or abutting on the new lines of such proposed streets, ways, places, parks, playgrounds or other public grounds or extensions thereof designated on the plat"; no exception is provided for constructive notice; the legislature in clear and unequivocal language stated that property owners must be given actual notice and, where this was admittedly not done, a city planning and urban renewal commission may not rely on that statute (MCLA 125.52).

5. Zoning—Highways—Police Power—Eminent Domain—Statutes.

The zoning enabling act and the home rule act were not intended by the Legislature to confer upon cities the authority to require that land be set aside for roads and streets; zoning is justified under the police power, but, except in extraordinary circumstances, private property cannot be appropriated without compensation under the police power (MCLA 117.1 *et seq.,* 125.581 *et seq.).*

6. Eminent Domain—Property—Police Power—Zoning.

The state may not, in the name of the police power, require a property owner to refrain indefinitely and without payment from using and enjoying his property; the Legislature did not, when it adopted zoning enabling legislation, authorize local units of government to use the police power to require the reservation of property that a public authority might some day wish to condemn.

7. Zoning—Ordinances—Constitutional Law—Highways—Build-
ING Setbacks.

    Section of a zoning ordinance is unconstitutional on its face and
    there was no enabling legislation which permitted the city to
    enact the ordinance which provided that no building or struc-
    ture shall be erected or constructed within the area set down
    by the city's master thoroughfare plan and that all setbacks,
    where required, shall be measured from the proposed right-of-
    way established by the city's master thoroughfare plan (Warren
    zoning ordinance § 4.36).

8. Zoning—Constitutional Law—Notice—Eminent Domain—Dedi-
CATION.

    Zoning ordinance is unconstitutional because (1) the city's master
    thoroughfare plan was adopted without notice to plaintiffs, who
    were property owners; (2) the ordinance contains no time limit
    for resolution of the question of whether the land, on which no
    building or structure shall be erected, will ever be condemned;
    and (3) the ordinance, in effect, requires dedication by plaintiffs
    of a large portion of their property for public purposes without
    any provision for compensation, and, if a condemnation author-
    ity does eventually condemn the land, it could very well be
    considerably depreciated from its present worth (Warren zoning
    ordinance § 4.36).

Appeal from Court of Appeals, Division 2, Levin,
P. J., and Holbrook and Bronson, JJ., reversing
Macomb, Walter P. Cynar, J. Submitted May 2,
1972. (No. 2 May Term 1972, Docket No. 53,240.)
Decided July 26, 1972.

29 Mich App 309 affirmed.

Complaint by Harold H. Gordon and Louis P.
Begin for writ of superintending control in the
nature of mandamus against the City of Warren
Planning and Urban Renewal Commission to com-
pel approval of a low-rise multiple-dwelling site
plan. Consent judgment entered. Complaint by the
defendant against plaintiffs for injunctive relief
and an order to show cause why certain buildings
should not be removed because they were not

being built in accordance with the site plan. Judgment that certain buildings could remain providing others were removed. Plaintiffs appealed to the Court of Appeals. Reversed. Defendant appeals. Affirmed.

*Roy W. Rogensues,* for Harold H. Gordon.

*Kenneth R. McAlpine,* for Louis P. Begin.

*Sherman P. Faunce II* and *John J. Murray,* for defendant.

SWAINSON, J. Plaintiffs own a 15–1/2 acre tract of land in the City of Warren. In 1967 the tract was zoned for multiple family dwellings. Plaintiffs desired to construct low-rise multiple dwellings and submitted a site plan to defendant planning and urban renewal commission in July 1968. The commission failed to approve the plan and plaintiffs commenced an action for writ of superintending control in the nature of mandamus.

Hearing was had before the trial court on January 13, 1969. Defendant asserted at the hearing that four of plaintiffs' proposed buildings were situated too close to Mound Road because the State Highway Department proposed to build an expressway over Mound Road and this proposed expressway had been incorporated into the city's master thoroughfare plan. Mound Road is presently 204 feet wide. The State Highway Department's plans called for widening Mound Road by 200 feet on the west side of the existing road. (This is the side of the road that abuts plaintiffs' property.) When, or if ever these plans will be implemented, is uncertain, although defendant contends that the proposed plans call for the State Highway Department to commence acquiring property for

such widening in 1971 or 1972. Under plaintiffs' plan as submitted to the planning commission, their buildings 1, 2, 3 and 6 would be located in the path of the proposed widened Mound Road.

At the conclusion of the hearing, the court suggested that the parties attempt to relocate some of the proposed buildings outside the path of the proposed widened Mound Road. The parties met pursuant to the trial court's suggestion, and they agreed that buildings 1 and 2 would be built as shown on the site plan; also, that buildings 3 and 6 could be relocated west of a line 240 feet west of the existing boundary of Mound Road—200 feet for the new right-of-way and 40 feet for a setback required under the local zoning ordinance. The reason all four buildings could not be relocated was because of the city ordinance regulating the density of the project.

The agreement, by reference to certain site plans, was embodied in a judgment entered on January 20, 1969. Construction was begun and it was then discovered that a mistake had been made by plaintiffs' planning consultant, so that it appeared there were 69 additional feet in the existing right-of-way than actually existed. This mistake occurred because the judgment order entered on January 20, 1969, incorporated by reference plaintiffs' revised site plan, and, according to the site plan, the center of Mound Road and the east line of section 5 (Town 1 North, Range 12 East, of the City of Warren) appeared as one and the same. However, the east line of section 5 was actually 69 feet east of the center of Mound Road. Due to this error, buildings 3 and 6 were being constructed east of and within the 240-foot line. Buildings 3 and 6 were, respectively, 185 feet and 195 feet west of the present westerly line of Mound Road,

and buildings 1 and 2 were, accordingly, also 69 feet closer thereto.

On September 26, 1969, defendant filed complaint for injunctive relief and an order to show cause why all four buildings should not be removed because they were not being built in accordance with the site plan. The trial court ruled that buildings 1 and 2 could remain, provided buildings 3 and 6 were removed.

On appeal to the Court of Appeals, the majority opinion held that the original judgment was based on a mutual mistake and the parties should, therefore, not be bound by it. The Court further held that on the merits of the case, the city was not authorized to prevent the construction of the buildings. 29 Mich App 309. The dissenting opinion held that the parties entered into a consent judgment and were bound by it. We granted leave to appeal. 384 Mich 827.

On appeal to this Court, the following four issues were agreed to by both parties:

1. Whether the judgment order of January 20, 1969, was a consent judgment?

2. Whether there was a mutual mistake of a material fact?

3. Whether the City of Warren has the power to prevent a landowner from constructing buildings within a proposed right-of-way as designated by a recorded master thoroughfare plan?

4. Whether the trial judge exceeded his equitable powers in ordering the demolition of plaintiffs' partially completed multiple-dwelling buildings, which were not constructed in accordance with the judgment of January 20, 1969?

We agree with the majority of the Court of Appeals that there was a mutual mistake of fact which abrogates the judgment of the circuit court.

We further hold that based on the merits, the ordinance of defendant city is unconstitutional as a violation of due process of law.

*I.*

Under the revised site plan, the center line of Mound Road and the east section line of section 5 were shown to coincide. In fact, the present center line of Mound Road is 69 feet west of the east section line.* The parties thus mistakenly believed that they had an extra 69 feet within which to locate these buildings. Because they did not, buildings 3 and 6 would be within the proposed widening of Mound Road.

Plaintiffs contend that they entered into the agreement only because they believed their buildings would be west of the 240-foot line. Defendant asserts that a representative of plaintiffs made the mistake and that plaintiffs should be bound by it. It is true that the mistake was made by a planning consultant employed by plaintiffs. One of plaintiffs' construction personnel was, in fact, also aware of this mistake. However, it is also clear

---

* The Court of Appeals summarized the manner in which the mistake occurred as follows (29 Mich App 309, 319 [fn 11]):

"The testimony and exhibits introduced into evidence tend to show how the mistake occurred. As originally established, the center line of Mound Road (then 66 feet wide) coincided with the east line of Section 5. When Mound Road was widened to its present 204 feet the entire additional 138 feet was taken from the west side of Mound Road, not 69 feet from each side; thus the center line of old Mound Road was moved westerly 69 feet to its present location. Accordingly, while the east section line is 171 feet from the west line of Mound Road (the east property line) the present center line of Mound Road is only 102 feet east of the east property line. The planning consultant engaged by the plaintiffs was unaware that the entire additional 138 feet required for that widening of Mound Road was taken from the west side of Mound Road; he mistakenly assumed that 69 feet was taken from each side and on that assumption drew the site plan showing that the center line of Mound Road remained where it was originally located, *i.e.,* coincident with the east line of Section 5."

that plaintiffs themselves did not have any knowl-
edge of this fact. Both plaintiffs and defendant
honestly and in good faith believed that the site
plan was proper and that the agreement worked
out by the parties could be fulfilled. Thus, we hold
that there was a mutual mistake of fact which
occurred in the original judgment entered by the
trial court.

The question of whether there was a consent
judgment is not necessary to a resolution of the
issues in this case. Once a determination has been
made that a mutual mistake of fact occurred, a
court has the power to correct that mistake by
vacating the judgment. This is true even in the
case of a consent judgment. *Hews v Hews,* 145
Mich 247 (1906); *Horning v Saginaw Circuit Judge,*
161 Mich 413 (1910); *J L Hudson Co v Barnett,* 255
Mich 465, 469 (1931). See, also 46 Am Jur 2d,
Judgments, § 717, p 870.

We believe such a mistake of fact did occur and
we agree with the Court of Appeals that the rights
of the parties should be adjudicated on the merits.

Defendant contends that the City of Warren has
the authority to prevent a landowner from con-
structing buildings within a proposed right-of-way
as designated by a recorded master thoroughfare
plan, and relies on MCLA 125.51 *et seq.;* MSA
5.3007(1) *et seq.* in support of such contention.
This statute allows a planning commission, after
the adoption of a master plan, to certify plats of
precise proportions to the local legislative body
and to regulate buildings within such lines.

Defendant cites 26 Am Jur 2d, Eminent Domain,
§ 169, pp 843–844, and *Miami v Romer,* 73 So 2d
285 (Fla, 1954), for the proposition that such stat-
ute is constitutional and does not constitute a
taking of land. However, the difficulty with defend-

ant's position is that it has failed to follow the procedures outlined in the statute. MCLA 125.52; MSA 5.3007(2) provides in part:

"The legislative body of any city or village may by ordinance adopt any such precised plat certified to it by the planning commission as provided in section 1: Provided, That notice of time and place when and where it shall be considered for final passage shall be sent by mail to the record owners of land located within or abutting on the new lines of such proposed streets, ways, places, parks, playgrounds or other public grounds or extensions thereof designated on the plat."

Defendant concedes the statutory notice was not sent to every property owner, including plaintiffs. It contends, however, that actual notice was not necessary because plaintiffs had constructive notice, since the plan was recorded in the register of deeds' office. It further asserts that plaintiffs are estopped from contending violation of the statutory provisions since they did not challenge same in the original proceedings. However, we have held that due to the mutual mistake which occurred, we would decide the rights of the parties as if no judgment had been entered, and, thus, no estoppel has occurred.

The terms of the statute are clear. It says, "notice of time and place when and where it shall be considered for final passage shall be sent by mail to the record owners of land located within or abutting on the new lines of such proposed streets". No exception is provided for constructive notice. The Legislature in clear and unequivocal language stated that property owners must be given actual notice. This was admittedly not done, and defendant may not now rely on this statute.

Two other pertinent statutes to be considered in this context are the city or village zoning act

(MCLA 125.581 *et seq.;* MSA 5.2931 *et seq.)* and
the home rule act (MCLA 117.1 *et seq.;* MSA
5.2071 *et seq.),* particularly section 4i thereof,
MCLA 117.4i; MSA 5.2082. Defendant asserted in
the Court of Appeals that these statutes were
enabling legislation to permit the action taken.
However, we agree with the holding of the major-
ity opinion of the Court of Appeals, wherein Judge
LEVIN stated, *supra* 326–327:

"We are persuaded that the legislature did not intend
when it adopted the zoning enabling act in 1921 and
the pertinent provision in the home rule act in 1929 to
confer upon cities the authority to require that land be
set aside for roads and streets. Zoning regulation of the
area of 'yards, courts and other open spaces' is, as the
home rule act expressly provides, largely intended to
provide for adequate light and ventilation between
structures. It also serves traffic safety, fire protection
and aesthetic interests. Zoning is justified under the
police power, but, except in extraordinary circum-
stances, not present in this case, private property can-
not be appropriated without compensation under the
police power.

"The conceptual difference between requiring a yard
setback for light and air (which the State need not pay
for) and requiring that land be set aside for a public use
(which, before it can be put to that use, the State must
pay for) may not be readily explicable. It is, neverthe-
less, perfectly clear that there is a difference, a constitu-
tional difference, between telling a property owner that
he must provide space between his building and that of
his neighbor and telling him to set aside land for
possible future condemnation.

"Just as the taking of property without payment
cannot, except in extraordinary circumstances, be justi-
fied as an exercise of the police power, so too the State
may not, in the name of the police power, require a
property owner to refrain indefinitely and without pay-
ment from using and enjoying his property. The Michi-
gan legislature did not, when it adopted zoning ena-
bling legislation, ignore this constitutional limitation; it

did not authorize local units of government to use the police power to require the reservation of property that a public authority might some day wish to condemn."

Thus, there was no enabling legislation which permitted the City of Warren to enact the zoning ordinance upon which it relied. Moreover, we believe that section 4.36 of the Warren zoning ordinance is unconstitutional on its face. This section provides:

"4.36 Building Setbacks on Major Streets and Highways

"(a) No building or structure shall be erected or constructed within the area set down by the city's master thoroughfare plan.

"(b) All setbacks, where required, shall be measured from the proposed right-of-way established by the city's master thoroughfare plan."

We agree with the Court of Appeals that this ordinance contains none of the safeguards which could sustain its constitutionality. The city's master thoroughfare plan was adopted without notice to plaintiffs. The ordinance contains no time limit for resolution of the question of whether the land will ever be condemned. The ordinance, in effect, requires the dedication by plaintiffs of a large portion of their property for public purposes without any provision for compensation, and, if a condemnation authority does eventually condemn the land, it could very well be considerably depreciated from its present worth. For each of these reasons, we hold the zoning ordinance unconstitutional.

The Court of Appeals is affirmed. Costs to plaintiffs.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. E. BRENNAN, T. G. KAVANAGH, and WILLIAMS, JJ., concurred with SWAINSON, J.