ARROWHEAD DEVELOPMENT COMPANY v LIVINGSTON
COUNTY ROAD COMMISSION

Docket No. 78-2373. Submitted May 8, 1979, at Detroit.—Decided
August 20, 1979. Leave to appeal applied for.

Arrowhead Development Company brought an action against the
Livingston County Road Commission seeking to vacate a por-
tion of a subdivision plat by changing an existing intersection
between a road in the plaintiff's subdivision, Navajo Trail, and
a county road, Chilson Road, into a cul-de-sac, and alterna-
tively, to prevent the defendant from enforcing an agreement
between the parties that would require the plaintiff to regrade
portions of Chilson Road in order to make the intersection
between Chilson Road and Navajo Trail safer for automobile
traffic. The Livingston Circuit Court, Paul R. Mahinske, J.,
dismissed the plaintiff's complaint. Plaintiff appeals. The sole
issue on appeal is whether a county road commission may
require the developer of a subdivision to make improvements
on a county road, which is outside of the subdivision, as a
condition of plat approval where the improvements are neces-
sary to alleviate a hazardous condition created solely by the
subdivision development. *Held:*

A county road commission has statutory authority to condi-
tion approval of plats upon certain exactions designed to insure
the safety of those entering a county road from a proposed
subdivision street. This authority is not limited to improve-
ments on roads within the subdivision, but allows exactions for
off-site improvements. In the present case there is a rational
nexus between the needs created by the subdivision and the
proposed off-site improvement. The exaction here required by
the defendant as a condition for plat approval was a valid

REFERENCES FOR POINTS IN HEADNOTES
[1] 39 Am Jur 2d Highways, Streets, and Bridges §§ 104, 337 *et seq.*
  Liability and suability, in negligence action, of state highway, toll
  road or turnpike authority. 62 ALR2d 1222.
[2, 3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
  Political Subdivisions § 193 *et seq.*
[4] 7 Am Jur 2d, Attorney General § 8.
[5] 16 Am Jur 2d, Constitutional Law §§ 294, 550.

exercise of the state's police power which furthers the public health, safety and welfare and was not an unconstitutional taking of property.

Affirmed.

1. HIGHWAYS — COUNTY ROAD COMMISSIONS — DUTIES.

A county road commission has an affirmative duty to design and construct roads and keep them reasonably safe and convenient for public travel.

2. CONSTITUTIONAL LAW — LOCAL GOVERNMENTS — POWERS.

The Michigan Constitution mandates an expansive interpretation of constitutional and statutory provisions relating to the powers of local governments (Const 1963, art 7, § 34).

3. HIGHWAYS — COUNTY ROAD COMMISSIONS — SUBDIVISIONS — PLAT APPROVAL — EXACTIONS — STATUTES.

The statute which empowers county road commissions to require exactions as conditions for plat approval does not limit the exaction power solely to improvements on roads within a proposed subdivision as a condition for plat approval (MCL 560.183; MSA 26.430[183]).

4. COURTS — COURT OF APPEALS — OPINIONS OF ATTORNEY GENERAL.

Opinions of the Attorney General are not binding on the Court of Appeals.

5. CONSTITUTIONAL LAW — RATIONAL NEXUS TEST — PLAT APPROVAL — OFF-SITE IMPROVEMENTS.

A rational nexus test is to be used for determining the constitutionality of requiring off-site improvements as a condition for plat approval.

*Michael J. McGivney,* for plaintiff.

*Laird & Grace,* for defendant.

Before: M. J. KELLY, P.J., and BASHARA and R. B. BURNS, JJ.

M. J. KELLY, P.J. In this action, plaintiff requested the lower court (1) to vacate a portion of a subdivision plat by changing an existing intersection between a subdivision road, Navajo Trail, and

a county road, Chilson Road, into a cul-de-sac; and alternatively, (2) to prevent defendant from enforcing an agreement between the parties that would require plaintiff to regrade portions of Chilson Road in order to make the intersection between Chilson and Navajo safer for automobile traffic. Plaintiff appeals as of right a May 30, 1978, order of the Livingston County Circuit Court dismissing its complaint.

At a hearing held on December 8, 1977, testimony established that plaintiff had agreed to regrade a portion of Chilson Road as a condition for approval of its subdivision plat. Although there was no testimony that any accidents had occurred at the intersection, witnesses for both plaintiff and defendant agreed that there was a visibility problem at the intersection due to the nature of the terrain. On May 1, 1978, the lower court issued a written opinion in which it concluded that:

"[A] County Road Commission may require a [subdivision] proprietor to make improvements on roads in its jurisdiction or to come under its jurisdiction as a condition to plat approval. The cutting of the sight obstruction in the case at hand is not a situation where the Road Commission is demanding that the proprietor pay for costs that are properly attributable to the County. Without the opening of Navajo Trail onto Chilson Road such obstruction would not be a hazard to travelers on Chilson Road."

The court also held that the defendant's decision to require plaintiff to leave open the intersection between Navajo Trail and Chilson Road was not an abuse of discretion.

Plaintiff appeals only from that portion of the lower court's decision upholding the authority of defendant to require plaintiff to make changes in Chilson Road, a county road, as a condition of

subdivision plat approval. Thus, a single question of law is presented for our review.

*May A County Road Commission Require The Developer Of A Subdivision To Make Improvements On A County Road, Which Is Outside Of The Subdivision, As A Condition Of Plat Approval Where The Improvements Are Necessary To Alleviate A Hazardous Condition Created Solely By The Subdivision Development?*

Plaintiff asserts that, because the defendant is demanding that it pay regrading costs attributable to the county, the defendant's action serves to deprive plaintiff of property without due process of law. On the other hand, the road commission argues that the Subdivision Control Act, MCL 560.101 *et seq.;* MSA 26.430(101), *et seq.,* which empowers it to condition plat approval upon the removal of hazards created by subdivision development, should not be interpreted to require that exactions for road improvements be limited solely to those roads within the physical confines of a proposed subdivision.

At the outset, we note that this is a case of the first impression; no Michigan cases have considered the issue whether a county road commission possesses the authority to require a subdivision developer to make improvements outside of a proposed subdivision as a condition for plat approval. Therefore, in resolving this issue, our analysis necessarily commences with the language of the statute empowering county road commissions to require exactions as conditions for plat approval.

MCL 560.183; MSA 26.430(183), of the Subdivision Control Act, states in relevant part:

"(1) The county road commission may require the following as a condition of approval of final plat for all

highways, streets and alleys in its jurisdiction or to come under its jurisdiction and also for all private roads in unincorporated areas:

"(a) Conformance to the general plan, width and location requirements that the board may have adopted and published.

"(b) Adequate provision for traffic safety in laying out drives which enter county roads and streets, as provided in the board's current published construction standards.

"(c) Proper drainage, grading and construction of approved materials of a thickness and width provided in its current published construction standards. ·

"(d) Submission of complete plans for grading, drainage and construction, to be prepared and scaled by a civil engineer registered in the state.

"(e) Installation of bridges, culverts and drainage structures where it deems necessary."

It is the duty of a county road commission "to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel". MCL 224.21; MSA 9.121. A county road commission has an "affirmative duty to design and construct the road and keep it 'reasonably safe and convenient for public travel' ". *Mullins v Wayne County,* 16 Mich App 365, 375; 168 NW2d 246 (1969).

Furthermore, the Michigan Constitution mandates an expansive interpretation of constitutional and statutory provisions relating to local government powers, for it states:

*"The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor.* Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by

this constitution." Const 1963, art 7, § 34. (Emphasis added).

The statute itself contains no limiting provision which requires that exactions take place only within the physical confines of the proposed subdivision. Moreover, its language expressly authorizes the county road commission to condition approval of plats upon certain exactions designed to insure the safety of those entering a county road from a proposed subdivision street; specifically, subparagraphs (a) and (b) permit plat approval to be conditioned on conformance with the road commission's general plan and on adequate provision for traffic safety. Furthermore, subparagraph (e) allows the road commission to require the "(i)nstallation of bridges, culverts and drainage structures where it deems necessary", a phrase suggesting that such installation may occur outside of the proposed plat, if necessary.

We find the absence of limiting language in the statute to be consistent with the Legislature's intent to endow county road commissions with broad authority to carry out their public duties. To construe the statute to permit exactions only within the plat would be to impose an arbitrary and unrealistic limitation upon the road commission's authority, contrary to its statutory directive to require "adequate provision for traffic safety". We hold that MCL 560.183; MSA 26.430(183) does not limit a road commission's exaction power solely to improvements on roads within the proposed subdivision as a condition of plat approval.

Plaintiff's position that off-site exactions are an unconstitutional taking, is grounded upon an opinion of the Michigan Attorney General, OAG, 1977-1978, No 5181 (March 8, 1977), which interpreted

MCL 560.183; MSA 26.430(183). In that opinion, the Attorney General stated:

"Under the above-quoted section a county road commission may require a proprietor to make improvements on roads in its jurisdiction or to come under its jurisdiction. Thus, the road commission may require that certain improvements be made on county roads within a plat as a condition to plat approval. See *Allen v Stockwell,* 210 Mich 488; 178 NW 27 (1929). However, a county may not take advantage of a proprietor's desire to improve his property by demanding that he pay for costs that are properly attributable to the county. Illustrative of this principle is *Gordon v City of Warren Planning & Urban Renewal Commission,* 388 Mich 82, 91; 199 NW2d 465 (1972).

\* \* \*

"It is therefore my opinion that, although a county road commission may deny approval of a plat on the ground that the proprietor refuses to improve a county road within the plat submitted, the commission may not refuse to approve the plat on the ground that the proprietor refuses to perform a road improvement on a county road adjoining or near the land contained within the plat."

We note that opinions of the Attorney General are not binding on this Court. *Traverse City School Dist v Attorney General,* 384 Mich 390, 410, fn 2; 185 NW2d 9 (1971), *David Walcott Kendall Memorial School v Grand Rapids,* 11 Mich App 231, 237; 160 NW2d 778 (1968). Because we find the foregoing analysis unpersuasive, we will not follow it. In our opinion, neither of the cited cases compels, or even suggests, the conclusion that an action by a road commission, pursuant to MCL 560.183; MSA 26.430(183), must be limited to the area within the plat.

In *Allen, supra,* the Court upheld the county plat board's refusal to approve plaintiff's plat

where plaintiff would not comply with a city ordinance which required him to grade and gravel the street, put in surface drains, lay sidewalks, and install sanitary sewers within the plat area. In *Gordon, supra,* it was held that the city planning commission could not require a property owner to "set-aside" land for possible future condemnation as a condition of plat approval. In holding that the commission's action constituted a taking without due process, the Court quoted with approval the majority opinion of Judge (now Justice) LEVIN in *Gordon v City of Warren Planning & Urban Renewal Comm,* 29 Mich App 309, 327; 185 NW2d 61 (1971), where it was stated:

"The conceptual difference between requiring a yard setback for light and air (which the State need not pay for) and requiring that land be set aside for a public use (which, before it can be put to that use, the State must pay for) may not be readily explicable. It is, nevertheless, perfectly clear that there is a difference, a constitutional difference, between telling a property owner that he must provide space between his building and that of his neighbor and telling him to set aside land for possible future condemnation."

In the case at bar, we too find there to be a constitutional difference between requiring a subdivision developer to eliminate a hazardous condition that his development has solely caused and requiring him to set aside land for possible future condemnation. Although it is true that a road commission's exaction could be so unreasonable and arbitrary that it would deprive a developer of his property without due process of law, we think that the case law of other jurisdictions, which has propounded a "rational nexus" test between the needs created by the subdivision and the proposed off-plat improvement, provides a useful analytic

framework for distinguishing a valid exaction from an unconstitutional taking.

In *Divan Builders, Inc v Planning Board Twp of Wayne,* 66 NJ 582; 334 A2d 30 (1975), the New Jersey Supreme Court held that a planning board could condition subdivision plat approval on the payment of money to improve a stream located outside of the plat, which carried drainage away from the subdivision. In so holding, the court reasoned that the New Jersey Constitution requires a liberal construction of municipal statutes, which in this case did not expressly limit the municipality's power to condition plat approval to improvements within the proposed subdivision; that there was a rational nexus between the needs created by the subdivision and the proposed improvement; and finally, that the requirement was a reasonable exercise of the municipality's authority to safeguard the public health and general welfare.

In California, it has been held that conditions imposed upon developers are lawful when they are not in conflict with statutes and ordinances and reasonably relate to the intended use of the subdivision and to the character of the area. *Ayres v The City Council of Los Angeles,* 34 Cal 2d 31; 207 P2d 1 (1949). Although the *Ayres* case concerned the dedication of property within a subdivision, in a later case, *City of Buena Park v Boyar,* 186 Cal App 2d 61; 8 Cal Rep 674 (1960), the California court upheld a plat approval requirement that a developer bear a portion of the cost of off-site improvements serving a proposed subdivision. Because the improvement, a drain, directly benefited the subdivision, the court upheld the imposition of costs as a valid application of a statute which spoke in terms of "land to be served" and which

was not limited in application to land within a proposed subdivision. The opinion also noted that the power to require off-site improvements was a proper incident to the municipality's police power.

In our opinion, an analysis which focuses on the rational nexus between the needs of the subdivision vis-à-vis the proposed outside improvement provides an appropriate tool for determining the propriety of off-plat exactions by road commissions. Because the impact of subdivision developments will vary from community to community, each case must be tested on its own facts to determine whether a road commission is reasonable in exacting improvements outside the proposed subdivision. Nevertheless, we find that the rational nexus analysis provides a flexible device for the resolution of disputes which are, necessarily, fact-dependent. We therefore expressly adopt the rational nexus test for determining the constitutionality of off-site improvements as a condition for plat approval.

In the present case, the evidence establishes a rational nexus between plaintiff's development of Arrowhead Subdivision and the hazardous traffic intersection where Navajo Trail meets Chilson Road. Witnesses for both plaintiff and defendant agree that there is a visibility problem at the intersection and it is uncontroverted that the hazardous condition is a direct result of plaintiff's development of the subdivision. In 1973, prior to plat approval, both parties recognized that the joinder of Navajo Trail to Chilson Road would create a "blindspot", which fell well below the minimum standards for sight clearance provided in a general plan for Livingston County Roads.[1]

---

[1] The minimum standards for sight clearance for Livingston County roads are the same as those established by the Michigan State Highway Commission.

Anticipating this problem, the road commission exacted plaintiff's promise to regrade the hill on Chilson Road, in order to improve sight clearance, as a condition to its approval of plaintiff's plat. Rather than make the improvement immediately, plaintiff filed a bond guaranteeing that the improvement to Chilson Road would be made. The subdivision plat was thereupon accepted by the Livingston County Road Commission and plaintiff proceeded with development. By 1976, plaintiff had yet to perform his promise and correct the sight clearance problem. When threatened with forfeiture of the bond, plaintiff brought this suit to enjoin such action on the part of the road commission.

We find that the evidence adduced here clearly establishes a rational nexus between the creation of Arrowhead Subdivision and the hazardous traffic condition at the intersection of Navajo Trail and Chilson Road. In view of this relationship, the road commission's exaction, that plaintiff regrade a hill on a county road, is a legitimate exercise of the state's police power which furthers the public health, safety and welfare. We hold, therefore, that MCL 560.183; MSA 26.430(183) does not limit a road commission to exacting improvements solely on roads contained within the proposed subdivision as a condition of plat approval.

Affirmed.